UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| PUPSA KUMARI CHAUDHARY | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-532 |
| | § | |
| ORLANDO PEREZ[1] *et al.* | § | |

## ORDER

Petitioner brings this 28 U.S.C. § 2441 Petition challenging her continued detention despite being granted withholding of removal (*see* Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART AND DENIES IN PART** the Petition.

## I.     BACKGROUND

Petitioner, a national and citizen of Nepal, entered the United States on December 27, 2024 (Dkt. Nos. 1-2 at 2, ¶¶ 2–4; 9-1 at 1, ¶ 4). Immigration officials immediately detained her and later served her with a Notice to Appear (Dkt. Nos. 1-2 at 2, ¶ 4; 9-1 at 1–2, ¶¶ 4–7).

Petitioner sought asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT") claiming that members of a rival political party in Nepal threatened and harmed her based on her political affiliation and activity (Dkt. No. 1-2 at 2, ¶ 5). On September 25, 2025, an immigration judge ordered Petitioner removed to Nepal and denied asylum and CAT protection, but simultaneously granted her withholding of removal to Nepal (Dkt.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche is automatically substituted for Respondent Pamela Bondi in this case. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

Nos. 1-1; 1-2 at 2, ¶ 6; 9-1 at 2, ¶ 8). The immigration judge did not designate any other country for removal (Dkt. No. 1-1 at 4). Both Petitioner and DHS waived appeal, rendering the removal order final that same day (Dkt. No. 1-1 at 5). Petitioner states that she has no citizenship or residence in any other country and fears that, if deported to a different country, she could be harmed there or sent to Nepal (Dkt. No. 1-2 at 2, ¶¶ 3, 11).

Petitioner is in ICE's custody at the Laredo Processing Center (Dkt. No. 9-1 at 1, ¶ 3). At the time she filed her Petition, she had been detained for over six months since her removal order became final and over fifteen months in total (Dkt. No. 1-2 at 2, ¶¶ 4, 12). Petitioner challenges her continued detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Dkt. No. 1 at 24–25). She also claims that her removal to an undisclosed third country would violate the INA and the Due Process Clause (Dkt. No. 1 at 25–26; *see* Dkt. No. 1-2 at 2, ¶ 11 (Petitioner states she is "afraid to go back to Nepal" and fears that if she is deported to a third country, she "may be harmed there or that country will send [her] back to Nepal")). She seeks immediate release from custody (Dkt. No. 1 at 26). Respondents moved to dismiss the petition (Dkt. No. 9) and Petitioner replied (Dkt. No. 10). The matter is ripe for decision.

## II.    LEGAL STANDARDS

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-

00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." § 2243. A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

### B. Federal Rule of Civil Procedure 12(b)(6)

Courts have found "that use of Rule 12(b)(6) in [the] habeas context is inconsistent with the habeas rules." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *9 (W.D. Tex. June 18, 2020); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 n.32 (W.D. Tex. Oct. 14, 2025). Accordingly, "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

### III.   DISCUSSION

Respondents argue that Petitioner's continued detention is lawful because she is lawfully detained under 8 U.S.C. § 1231(a)(6) while Enforcement and Removal Operations ("ERO") "works to find a third country that will accept Petitioner's removal" (Dkt. No. 9 at 2). Their response to the petition requests dismissal under Rule 12(b)(6)

3

which is not a proper vehicle for deciding this case, especially given that Respondents' filing relies on matters outside the pleadings, including an officer's declaration. *See Miramontes*, 243 F. App'x at 856 (Rule 12(b)(6) is inappropriate in a habeas action). The Court declines to rely on Rule 12(b)(6) in adjudicating the petition and construes Respondents' filing as an answer to the petition. The *Zadvydas* issue in the case has been fully briefed by both sides.

### A. Indefinite Detention and *Zadvydas v. Davis*, 533 U.S. 678 (2001)

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period begins to run on "[t]he date the order of removal becomes administratively final." § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain them for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. Beyond that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* (citation

4

modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

### 1.    Presumptively Reasonable Period of Detention

As a threshold matter, the Court must determine whether Petitioner has been detained for the presumptively reasonable six-month period. Petitioner's reasonable detention period accrues the date her removal order became final. 8 U.S.C. § 1231(a)(1)(B)(i). Her removal order became final on the date it was issued, September 25, 2025, because all parties waived appeal (Dkt. Nos. 1-1 at 5; 9-1 at 2, ¶ 8). Therefore, Petitioner's post-removal detention commenced on September 25, 2025, more than six months before she filed her Petition on March 30, 2026 (Dkt. No. 1). Up to the date of this Order, Petitioner has been detained over nine months after her final order of removal.

### 2..    Petitioner's Burden

At this point, Petitioner need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699. Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). At any rate, Petitioner's sworn declaration, which explains her immigration proceedings and officials' actions after her final order of removal (Dkt. No. 1-2 at 2, ¶¶ 6–12), along with the immigration judge's order withholding her removal to Nepal and Respondents' tendered declaration (Dkt. Nos. 1-1; 9-1), satisfies Petitioner's burden.

First, third-country removals are exceedingly rare. In fiscal year 2017, "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (citation omitted). The grant of withholding of removal "'substantially increases the difficulty of removing'" an undocumented alien. *Marquez-Amaya v. Thompson*, 2025 WL 3654327, at *5 (W.D. Tex. Dec. 15, 2025) (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025)). Indeed, aliens with withholding of removal status "typically remain[ ] in the United States for the foreseeable future." *Johnson*, 594 U.S. at 552 (Breyer, J., dissenting). This makes sense, as foreign countries have little incentive to accept aliens with no connections to their country. *See Puertas-Mendoza*, 2025 WL 3142089, at *3 ("[F]oreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country.").

Aside from the rarity of third-country removals, ICE attempted to remove Petitioner to no avail. Petitioner states in her declaration that immigration officials told her that she had not been released because "the government was looking for a third country to accept [her]" and that she had to remain in detention because "higher-ups were deciding what to do" (Dkt. No. 1-2 at 2, ¶¶ 7, 10). By Respondents' own account, Belize, Panama, and Costa Rica expressly declined officials' request to accept Petitioner in November 2025 (Dkt. No. 9-1 at 2, ¶ 12). Although over seven months have elapsed since ICE received these responses, Respondents do not list any additional requests or identify an additional third country for Petitioner's removal. An ICE official's declaration states, without elaboration, that as of April 13, 2026, ERO "is continuing to work to identify and secure removal to a third country" and "is in communication with" detention

officers at Headquarters "for assistance with this removal" (Dkt. No. 9-1 at 3, ¶ 20). Regardless, standing alone, pending requests are "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at \*5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at \*5–6 (W.D. Tex. Oct. 24, 2025). To date, none of the Government's requests yielded results, significantly undercutting any likelihood that her removal is foreseeable.

Finally, Petitioner is a Nepali citizen with no meaningful ties to any other country (Dkt. No. 1-2 at 2, ¶ 3). *See Misirbekov v. Venegas (Misirbekov I)*, 793 F. Supp. 3d 892, 895 (S.D. Tex. 2025) (Olvera, J.) (finding a lack of connection to any country besides the alien's country of origin to be significant); *see also Trejo*, 2025 WL 2992187, at \*5. Of course, ICE cannot legally return Petitioner to Nepal. § 1231(b)(3); *cf. Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (barriers to repatriation are significant if a petitioner makes the required showing). However, nothing precludes a third country from extraditing her to Nepal—where she will likely be persecuted. *See Sagastizado v. Noem (Sagastizado II)*, 802 F. Supp. 3d 992, 1015 (S.D. Tex. 2025) (discussing how once an alien is removed, non-refoulment may no longer be feasible); *D.V.D.*, 145 S. Ct. at 2154–55 (refoulment of a gay man back to his country of origin). As this District recognized, "[i]t is in the public interest to prevent 'aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Misirbekov v. Venegas (Misirbekov III)*, No. 1:25-CV-00168, 2025 WL 2450991, at \*2 (S.D. Tex. Aug. 15, 2025)

(Olvera, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This important consideration, taken with Petitioner's other evidence, persuades the Court that Petitioner carried her burden.

  3.  Whether the Government Rebutted Petitioner's Showing

Simply put, Respondents' rebuttal efforts do not rise to the occasion. Respondents rest on the unsubstantiated assertion that, because "ERO is continuing to work to identify and secure removal to a third country," there is "a significant likelihood of removal in the reasonably foreseeable future" (Dkt. No. 9-1 at 3, ¶ 20). However, the same declaration states that officials have submitted requests to three countries, all of which denied the request to accept Petitioner, and identifies no other possible third country to which she could likely be removed (Dkt. No. 9-1 at 2–3, ¶¶ 11–12, 16, 20). Although Respondents argue that the Petitioner's petition fails because she does not present evidence "demonstrating that [she] cannot be removed to a third country in the reasonably foreseeable future" (Dkt. No. 9 at 6), this argument misstates the burden of proof, which rests on Respondents once Petitioner meets her initial burden. *See Zadvydas*, 533 U.S. at 701.

What is more, Respondents have not alleged that a foreign country has *ever* accepted a Nepali national deported from the United States. *See Trejo*, 2025 WL 2992187, at \*6; *see also Hassoun v. Sessions*, 2019 WL 78984, at \*5 (W.D.N.Y. Jan. 2, 2019). Petitioner was detained for over six months since her final order of removal when she filed her petition, more than the presumptively reasonable period. Respondents' inability to secure Petitioner's removal to this point casts serious doubt on their ability to do so at all. Thus, Petitioner's removal is not reasonably foreseeable, and her continued

confinement amounts to an unconstitutional, indefinite detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention); *id*. at 701("for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"); *see also Misirbekov III*, 2025 WL 2450991, at \*1–2 (detention of alien for six months and sixteen days was unreasonable where alien had no citizenship or ties to another country besides his country of origin and he would face "political persecution, torture, and death" if returned there).

**B.     Third-Country Removal.**

Looking to the future, Petitioner argues that the Due Process Clause requires notice of the country of intended removal and an opportunity to be heard on a fear-based claim (Dkt. No. 1 at 25–26). **The Court will not resolve this issue, as it is separate and distinct from Petitioner's prolonged detention**.

### IV.     CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. No. 1) is **GRANTED IN PART AND DENIED IN PART**. Petitioner's Motion for an Order to Show Cause (Dkt. No. 3) is **DENIED AS MOOT**. Respondents' Motion to Dismiss (Dkt. No. 9) is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **no later than 5:00 p.m. on July 16, 2026**. Petitioner's release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of her release as soon as practicable and **no less than two hours before her release**.

The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on July 18, 2026**, confirming that Petitioner has been released and advising the Court of her conditions of release.

The Court's prior **ORDER** that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of her from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** July 14, 2026.

Marina Garcia Marmolejo
United States District Judge

10